IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>ANTONIO CAMPUZANO GARCIA,<br><br>Defendant. | Case No. 22-CR-119<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

On August 20, 2023, a jury convicted Defendant Antonio Campuzano-Garcia ("Defendant" or "Campuzano") of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). After trial, Defendant's counsel[1] filed timely motions for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) [59] and for a new trial pursuant to Federal Rule of Criminal Procedure 33 [60]. For the reasons stated below, these motions are denied.

I. Background

On March 3, 2022, a grand jury returned a two-count indictment against Campuzano and his supplier, Jorge Luis Maldonado Bernabe ("Bernabe"). [1]. Bernabe was charged with knowingly and intentionally distributing 500 grams or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 1), and Campuzano was charged with knowingly and intentionally possessing with intent to distribute 500 grams or more

---

[1] The Court notes that Defendant absconded while on home confinement following the jury trial. The Court issued a bench warrant for Defendant, and he remains a fugitive. [53] [54].

1

of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 2). *Id.* On July 25, 2023, a grand jury returned an amended indictment that substituted "a quantity" rather than the numeric amount in Count 2 against Campuzano. [34] at 2.

At trial, the Government presented evidence of intercepted calls between the Defendant and Bernabe, obtained during an FBI investigation of Bernabe for cocaine trafficking. [62] at 3.[2] This evidence included transcripts and recordings of ten intercepted calls on July 2, 3, and 9, 2021. Gov't Exs. 101-10-T. Bernabe's son, Juan Carlos Maldonado ("Maldonado"), testified that he worked in the drug business with his father and identified the voices of Campuzano and Bernabe on the intercepted calls, as well as his own voice participating in one call on July 3, 2021. [62] at 9. Toll records showed Campuzano and Bernabe spoke on the phone 14 times on July 9 and twice on July 10. Gov't Ex. 401. In his testimony, Campuzano did not dispute his identity as one of the speakers in the intercepted calls. [62] at 12.

In the phone call at 2:52 PM on July 2, Campuzano told Bernabe he "wanted to work" for "9 hours" or "[i]n other words, one quarter." Gov't Ex. 101-T at 1-2. In the phone call at 4:19 PM on July 2, 2021, Campuzano told Bernabe "I needed to paint one quarter/room for today . . . if you happen to be able to send the half, um, then send the half," as well as stating "I forgot to give you/him/her what, what I still owe." Gov't Ex. 102-T at 1-2. Supervisory Special Agent ("SSA") Michael Culloton, a

---

[2] Neither party ordered transcripts of the trial. Defendant's perfunctory motions [59] [60] are each just two pages and state that Defendant incorporates all arguments made at trial. The Court therefore relies on the Government's response [62] and the exhibits entered at trial to recount the events of the trial.

2

narcotics trafficking expert, testified that drug traffickers typically use code words when discussing drug activities, including use of "work" to refer to narcotics dealing, and that cocaine is often distributed in units including a half or quarter kilogram, which equals approximately 9 ounces. [62] at 8-9. In a phone call at 2:24 PM on July 3, Bernabe confirmed Campuzano's address. Gov't Ex. 103-T. In a phone call at 2:26 PM on July 3 between Bernabe, Maldonado, and Campuzano, Bernabe and Maldonado confirmed the address once more and received driving instructions. Gov't Ex. 104-T. Maldonado testified that following that call, he went to Campuzano's residence and received money in a bag as payment for narcotics that Bernabe had previously provided to Campuzano. [62] at 9.

The remaining six calls took place on July 9. Gov't Exs. 105-T through 110-T. In a phone call at 3:20 PM, Campuzano asked if Bernabe was "working," and "if you have people there to work." Gov't Ex. 106-T at 1-2. Campuzano and Bernabe had the following exchange:

CAMPUZANO: And how old are they?

BERNABE: Over there on, on 3-3.

CAMPUZANO: Ooh, 3-3?

BERNABE: Yeah, but really, really fucking good. Really pretty.

CAMPUZANO: Yes, yes, I… Yes, I know the work that you have and, yes, I, I know it is.

BERNABE: Yes.

CAMPUZANO: But do you have three, three persons?

3

BERNABE: Yes.

CAMPUZANO: Okay, let me, let me talk with my boss here. I'm here with him right now.

Gov't Ex. 106-T at 3. Later in the conversation, Campuzano said, "But I think they might be too old to, um, to work in the kitchen. . . My boss says that he can actually give all three persons a job but whether you can give us a buck for both of us . . . Instead of the 33 we'll each get only 300 dollars." *Id.* at 4-6. In a phone call at 3:17 PM, Campuzano stated, "Do me a favor, could, could you give it to me for 32 ½?" Gov't Ex. 107-T at 2. Bernabe responded, "For 32 ½ if . . . we do the deal over at the house . . . they should bring me the currency there and we can do the deal there." *Id.* In a phone call at 3:33 PM, Campuzano asked if Bernabe would "bring me the people here to the house," and Bernabe responded "at that number, no, I can't, because I have to pay." 108-T at 1. SSA Culloton testified that a kilogram of cocaine typically sold from the high $20,000s to the middle $30,000s in Chicago at the time the calls took place. [62] at 8.

Special Agent Joseph Corry testified that during surveillance of Bernabe's residence the evening of July 9, he observed an unidentified male at the residence in a white Honda sedan, carrying a red backpack, at approximately 7:10 PM. [62] at 7. Task Force Officer ("TFO") Eric Siciliano testified that he conducted a traffic stop on the white sedan and the driver and sole occupant of the vehicle produced documentation identifying himself as Campuzano. *Id.* TFO Siciliano searched the vehicle after receiving consent and recovered the red backpack from the trunk, which

4

contained drugs. *Id.* SSA Culloton testified that kilogram quantities of cocaine are consistent with distribution rather than an amount for personal use. *Id.* at 8.

On direct examination, Campuzano admitted to retrieving the red backpack from Bernabe's residence and stipulated the backpack contained 3,003.4 grams of cocaine. *Id.* at 11. He further testified that he did not understand that the conversation was about drugs because an individual named "Jose," referred to as "boss" in the recorded calls, was telling Campuzano what to say. *Id.* at 12. Although Campuzano initially testified that he believed he was talking about hiring 33-year-olds to work at a restaurant, he admitted that he knew the conversation was in code later in his testimony. *Id.* at 13-14.

## II.     Legal Standard

Criminal defendants seeking a judgment of acquittal on the basis of insufficient evidence face an "uphill battle." *United States v. Perryman*, 20 F.4th 1127, 1133 (7th Cir. 2021) (further describing Rule 29 as "a heavy burden," "momentous task," and "a nearly insurmountable hurdle"). Courts reviewing Rule 29 motions "view the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *United States v. Garcia*, 919 F.3d 489, 496 (7th Cir. 2019) (quoting *United States v. Seidling*, 737 F.3d 1155, 1159-60 (7th Cir. 2013)). In conducting this review, courts do not reweigh evidence or second-guess witnesses' credibility. *United States v. Rebolledo-Delgadillo*, 820 F.3d 870, 876 (7th

Cir. 2016). "If there is a reasonable basis in the record for the verdict, it must stand." *United States v. Moshiri*, 858 F.3d 1077, 1082 (7th Cir. 2017).

Rule 33 allows district courts to vacate judgment and grant a new trial in the "interest of justice." Fed. R. Crim. P. 33(a). Still, "[a] jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (quoting *United States v. Morales,* 902 F.2d 604, 605 (7th Cir. 1990). The Seventh Circuit has made clear that there must be a "reasonable possibility that the trial error had a prejudicial effect on the jury's verdict" to warrant a new trial. *United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016). Granting relief under Rule 33 is hence "reserved for only the most extreme cases." *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021) (quoting *United States v. Hagler*, 700 F.3d 1091, 1101 (7th Cir. 2012)). "A new trial is warranted 'where the evidence preponderates so heavily against the defendant that it would be a manifest injustice to let the guilty verdict stand.'" *United States v. Conley*, 875 F.3d 391, 399 (7th Cir. 2017) (quoting *United States v. Reed*, 875 F.2d 107, 114 (7th Cir. 1989)). When considering a motion for a new trial, the court "may reweigh the evidence, taking into account the credibility of the witnesses." *United States v. Washington*, 184 F.3d 653, 658 (7th Cir. 1999).

III. Analysis

A. Defendant's Motion for a Judgment of Acquittal

Defendant's motion states that "[t]here was insufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that the defendant was

6

guilty of the offense charged." [59] at 2.[3] The Government was required to prove beyond a reasonable doubt that "(1) [t]he defendant knowingly possessed cocaine; and (2) [t]he defendant intended to distribute the substance to another person; and (3) [t]he defendant knew the substance contained some kind of a controlled substance. The government [was] not required to prove that the defendant knew the substance was cocaine." [49] at 18.

As noted by the Government in its response, "[a]t trial, defendant's theory of defense appeared to be that he did not know that the [red backpack] contained a controlled substance." [62] at 12. The Court presumes this is the argument the defense wishes to incorporate into this motion. Campuzano's own testimony acknowledged possession of a backpack stipulated to contain kilogram quantities of cocaine, meaning it is undisputed that he had physical possession of a controlled substance. [62] at 11. Given SSA Culloton's testimony that the quantity was consistent with distribution rather than personal use there is also sufficient evidence for a jury to reasonably believe that, if Campuzano knowingly possessed the cocaine, he intended to distribute it. *Id.* at 8. Therefore, the only remaining issue is whether

---

[3] Beyond a statement that "[t]he defendant incorporates herein all the points and arguments brought at trial," the motion contains no specific arguments or citations to authority. [59] at 1. As noted by the Government in its response, failing to develop a sufficiency of evidence argument by citing to specific details in the record and supporting authority forfeits the defense. [62] at 10; *see United States v. Jones,* 224 F.3d 621, 626 (7th Cir. 2000) ("The lack of development of this argument and absence of supporting case law 'speaks to the paucity of the argument.' Arguments that are not adequately developed or supported are waived, ergo we do not consider it.") (citations omitted) (quoting *United States v. Watson*, 189 F.3d 496, 500 (7th Cir. 1999)). Campuzano has waived this argument. However, the Court finds that Campuzano's motion also fails on the merits.

7

the evidence presented at trial was sufficient to support the jury's conclusion that Campuzano knowingly possessed the cocaine.

The jury was instructed that "[a] person acts 'knowingly' if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident" as determined by consideration of all evidence. [49] at 19. In his testimony, Campuzano admitted to knowing that the recorded telephone conversations were in code. [62] at 14. Without pausing for guidance from his boss, he told Bernabe he wanted to "work" for "9 hours," "[i]n other words, one quarter." Gov't Ex. 101-T at 1-2. Further, Campuzano told Bernabe "I know the work that you have" and negotiated for a reduction in price. Gov't Exs. 106-T at 3, 107-T at 2. Campuzano asked Bernabe to "bring the people here" and, when Bernabe refused, Campuzano traveled to Bernabe's residence to pick up the backpack. Gov't Ex. 108-T at 1; [62] at 7.

Based on SSA Culloton's testimony regarding the meaning of the code and the transcript showing Campuzano offering these statements without guidance from his boss, a jury could reasonably conclude he understood the code used, at least to the extent that Campuzano "believed it was highly probable that drugs were in the red backpack and that he took deliberate action to avoid learning that fact," rather than merely failing to make an effort to find the truth. [49] at 19. Campuzano also referenced owing money to Bernabe and provided directions to his residence. Gov't Exs. 102-T at 2; 104-T. A jury could reasonably conclude that Campuzano's testimony corresponded with Maldonado's assertion that he drove to Campuzano's residence to

8

receive payment for a previous drug transaction. [62] at 9. The jury could reasonably have found Maldonado's testimony a more credible explanation of events than Campuzano's, and "at this stage, we are not permitted to weigh the evidence or make credibility determinations, and we afford great deference to the jury's factual findings and credibility determinations." *Rebolledo-Delgadillo*, 820 F.3d at 876.

Overall, viewed in the light most favorable to the Government, the presented evidence established that Campuzano understood the coded conversations, had participated in previous drug transactions, negotiated a reduction in price in the current transaction, and therefore knew or believed it highly probable that the backpack he picked up from Bernabe contained a controlled substance. There was sufficient evidence presented at trial to support Campuzano's conviction for possession with intent to distribute a controlled substance.

This Court may only overturn the verdict if "no rational trier of fact could have agreed with the jury." *United States v. Brown*, 973 F.3d 667, 682 (7th Cir. 2020) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)). Because that cannot be concluded here, Campuzano's motion for judgment of acquittal is denied.

### B. Defendant's Motion for a New Trial

Campuzano moves for a new trial pursuant to Federal Rule of Criminal Procedure 33. [60]. The motion reiterates the insufficiency of evidence argument and contains no allegations of any trial error that would serve as a basis for granting relief under Rule 33. *Id*. Without any allegation of error, there is no possibility such error prejudiced the jury's verdict. As discussed above, the Government introduced

substantial evidence which, when considered in its totality, does not "leave[] a strong doubt as to the defendant's guilt of the charged offense." *Washington*, 184 F.3d at 658 (7th Cir. 1999). The jury's verdict is therefore not "against the manifest weight of the evidence" such that a new trial would be warranted. *Id.*

### IV. Conclusion

For the above reasons, the Court denies Campuzano's motions for a judgment of acquittal [59] and new trial [60].

E N T E R:

Dated: July 23, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge